# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| RTG-MI, LLC f/k/a ROYAL GROUP SERVICES, LTD, LLC, a Michigan limited liability company, and GREGORY RICHMOND, | : : : : Civil Action No. 3:19-cv-251 : : Jury Demanded |
| Plaintiffs, | : |
| v. | : : |
| JETPAY MERCHANT SERVICES, LLC, a Texas limited liability company, and WLES, L.P., a Texas limited partnership, | : : : : : |
| Defendants. | |

## COMPLAINT

Plaintiffs, RTG-MI, LLC f/k/a Royal Group Services, LTD, LLC and Gregory Richmond (jointly, "RTG"), file this Complaint against Defendants JetPay Merchant Services, LLC, and WLES, L.P. (jointly, "JetPay"), and state as follows:

### THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff RTG-MI, LLC f/k/a Royal Group Services, LTD, LLC, is a limited liability company organized under the laws of the State of Michigan, with its principal place of business in Michigan. For diversity purposes Plaintiff RTG-MI, LLC f/k/a Royal Group Services, LTD, LLC is a citizen of Michigan.

2. Plaintiff Gregory Richmond is an individual and citizen of Michigan.

3. Defendant JetPay Merchant Services, LLC, is a limited liability company organized under the laws of the State of Texas, with its principal

place of business in Texas. For diversity purposes Defendant JetPay Merchant Services, LLC, is a citizen of Texas. JetPay Merchant Services, LLC may be served at 3361 Boyington Drive, Suite 180, Carrollton, TX 75006-5174.

4. Defendant WLES, L.P., is a limited partnership organized under the laws of the State of Texas. For diversity purposes none of the partners or owners of Defendant WLES, L.P. are citizens of Michigan. WLES TX, LP may be served through its registered agent Trent R. Voigt, at 2233 Wolf Front Road, Van Alstyne, TX 75495-4997.

5. This Court has personal jurisdiction over JetPay because JetPay regularly and continuously conducts business in Texas.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs, and there is diversity of citizenship because this matter is between citizens of different states.

7. Jurisdiction and venue are also proper under the parties' written settlement agreement dated December 16, 2013 (the "Settlement Agreement").[1] Specifically, under Section 14 of the Settlement Agreement, the parties agreed that this Court shall retain jurisdiction over all disputes arising under the Settlement Agreement, including proceedings to enforce the terms of the Settlement Agreement.

## FACTUAL BACKGROUND

### A. Uncollectable Chargeback Insurance.

8. This is a dispute regarding credit and debit card chargebacks and insurance purchased by banks, to protect against losses from *uncollectible* chargebacks.

---

[1] Section 11 of the Settlement Agreement contains a confidentiality provision. Accordingly, a copy of the Settlement Agreement is not attached to this Complaint. Importantly, Defendants already have in their possession copies of the signed Settlement Agreement.

9. As background, credit and debit cards are generally issued within the payment networks (e.g., Visa/MasterCard/Discover) through the banks that issue the credit and debit cards to the consumers.

10. An "acquiring bank" has a relationship with payment card networks as well as the merchant's bank. An acquiring bank receives cardholder data from a merchant, routes the data through the payment networks and, after validation of the cardholder data, deposits the transaction amount (minus any fees) into the merchant's bank account.

11. When a cardholder disputes charges for, among other reasons, failure to receive goods or services, or is dissatisfied, the cardholder notifies their credit or debit card company. The merchant or the issuing bank initiates a chargeback, and the acquiring bank is required to reimburse the cardholder's funds. The acquiring bank is then left to recoup the chargeback from the merchant.

12. RTG is a licensed insurance broker which placed the sale of uncollectable chargeback insurance which protects acquiring banks against "uncollectable chargebacks," *i.e.*, when a merchant does not reimburse the acquiring bank for the money repaid to the cardholder.

13. In 2011, RTG placed an uncollectable chargeback insurance policy purchased by Merrick Bank, an acquiring bank (the "Chartis Policy"). The Chartis Policy was issued by Chartis Specialty Insurance Co. k/n/a AIG ("Chartis"). The Chartis Policy provided approximately $25 million of coverage to Merrick Bank for certain losses resulting from uncollectable chargebacks during the policy period, incurred within the terms of the policy.

14. JetPay is an independent sales organization registered with Visa and MasterCard and sponsored by an association member bank, Merrick Bank, that provides certain services to merchants, including establishing merchant accounts with acquiring banks, processing credit and debit card transactions, and reporting on account activity.

15. JetPay and Merrick Bank entered into an independent sales organization agreement. JetPay has alleged that it also purchased uncollectable chargeback insurance through Merrick Bank, to protect JetPay from losses incurred as a result of uncollectable merchant chargebacks.

**B.    The Direct Air Loss.**

16. In March 2012, one of the merchants, Southern Sky Air Tours d/b/a Direct Air ("Direct Air"), which received credit and debit card process services from JetPay and Merrick Bank, ceased operations and entered into bankruptcy. Direct Air customers who had pre-paid by a credit or debit card for goods and services to be delivered by Direct Air sought refunds, resulting in chargebacks paid by Merrick Bank allegedly in excess of $25 million (the "Direct Air Loss").

17. Merrick Bank sought to recover the uncollectable chargebacks from the Direct Air Loss under the Chartis Policy but Chartis denied Merrick Bank's claim. Merrick Bank and Chartis litigated their dispute over the Chartis Policy's coverage for the Direct Air Loss in the United States District Court, Southern District of New York, captioned *Merrick Bank Corporation v Chartis Specialty Insurance Company*, Civil Action No. 12-7315(RJS). According to filings by Chartis and Merrick Bank in that case, Chartis and Merrick Bank have settled their dispute. A copy of a filing from this dispute regarding Chartis and Merrick Bank's settlement is attached hereto as Exhibit A.

18. At the same time that Merrick Bank has been pursuing reimbursement from the Chartis Policy Direct Air Loss, it also sought to recover directly from JetPay. Merrick Bank and JetPay also have purportedly resolved their dispute regarding the Direct Air Loss.

**C.    The First Direct Air Action and Settlement Agreement.**

19. On November 18, 2013, JetPay filed a suit against RTG and Merrick Bank in this Court, Civil Action Number 3:13-cv-03101-L, and alleged

4

claims against Merrick Bank and RTG for negligence, fraud, breach of fiduciary duty, negligent misrepresentation, and breach of contract, among other things, directly arising from and relating to the Direct Air Loss (the "First Direct Air Action"). A copy of the amended complaint in the First Direct Air Action is attached hereto as Exhibit B.

20. On December 16, 2013, JetPay and RTG settled all of JetPay's claims against RTG in the First Direct Air Action and executed the Settlement Agreement, and on January 10, 2014, Merrick Bank and RTG filed a Stipulation of Dismissal with Prejudice and Without Costs. (3:13-cv-03101-L Docket No. 33.)

21. Among other things, Section 4(B) of the Settlement Agreement contains an indemnity provision whereby JetPay expressly and unambiguously agreed to indemnify RTG from any claims brought by any third party which arise out of, or relate in any way to, the First Direct Air Action including the Direct Air Loss (the "Indemnity Provision").

22. The Settlement Agreement was drafted and negotiated by counsel for all parties, and was supported by consideration. In addition, JetPay was on actual notice of the Indemnity Provision and the contents thereof.

**D.    The Second Direct Air Action.**

23. Approximately eighteen months after JetPay and RTG executed the Settlement Agreement, on June 30, 2015, Merrick Bank brought a separate lawsuit against RTG in the United States District Court, Southern District of New York, civil case number 1:15-cv-05120 (the "Second Direct Air Action"). Just like the First Direct Air Action, the Second Direct Air Action includes claims against RTG for negligence, breach of fiduciary duty, and unjust enrichment arising directly from and relating to the Direct Air Loss. A copy of the complaint to the Second Direct Air Action is attached hereto as Exhibit C.

24. The Second Direct Air Action is currently pending.

**E.    JetPay Refuses to Indemnify RTG.**

25.    Under the Indemnity Provision, JetPay is obligated to indemnify and hold harmless RTG for any damages, costs, and attorneys' fees incurred in connection with the Second Direct Air Action because the claims contained therein arise from and out of, and relate in whole or in part to, the claims that were asserted against RTG in the First Direct Air Action. Specifically, the claims in the Second Direct Air Action – just like in the First Direct Air Action – directly relate to and arise from the Direct Air Loss.

26.    On October 12, 2016, RTG timely sent written notice to JetPay regarding the Second Direct Air Action and requesting that JetPay indemnify RTG in that matter, including reimbursing RTG for expenses already incurred in the Second Direct Air Action and for JetPay to continue payment of all future RTG expenses.

27.    To date, JetPay has failed and refused to respond to RTG's indemnity request. As a result of JetPay's refusal to honor its contractual indemnity obligations under the Settlement Agreement, RTG has had no choice but to bring this action.

## COUNT I – DECLARATORY JUDGMENT

28.    RTG restates and realleges Paragraphs 1-27 above.

29.    The facts and circumstances of this case present a case of actual and justiciable controversy regarding the rights and legal relations of the parties with respect to the enforceability of the Indemnity Provision of the Settlement Agreement.

30.    RTG seeks a declaration that the Indemnity Provision contained in the Settlement Agreement is enforceable and that JetPay must indemnify RTG for all damages, costs, and attorneys' fees incurred by RTG in the Second Direct Air Action, as well as any other action falling under the Indemnity Provision.

## COUNT II – BREACH OF CONTRACT

31. RTG restates and realleges Paragraphs 1-30 above.

32. RTG and JetPay entered into the Settlement Agreement which contains, among other things, the Indemnity Provision.

33. Pursuant to the Indemnity Provision, JetPay expressly and unambiguously agreed to indemnify RTG against all claims brought by a third party for damages, costs, and attorneys' fees arising out of, or relating in any way to, the First Direct Air Action and the events alleged therein, including the Direct Air Loss.

34. The Second Direct Air Action contains claims which are specifically covered by the Indemnity Provision, including claims directly relating to the Direct Air Loss. As a result, JetPay is now obligated to indemnify RTG in connection with the Second Direct Air Action.

35. JetPay materially breached the Settlement Agreement because JetPay failed and refused to indemnify RTG in connection with the Second Direct Air Action.

36. As a direct and proximate result of JetPay's material and substantial breach of the Settlement Agreement, RTG has suffered and will continue to suffer damages in an amount in excess of $75,000, exclusive of interest, costs, and attorneys' fees.

## PRAYER

WHEREFORE, RTG respectfully requests that this Court enter judgment in favor of RTG, and against JetPay, (i) granting RTG declaratory relief; (ii) holding that JetPay materially breached its contractual obligation of indemnity under the Settlement Agreement; (iii) ordering JetPay, jointly and severally, to immediately indemnify and pay to RTG all damages, costs, interest, and attorneys' fees already incurred by RTG in the defense of the Second Direct Air Action; (iv) ordering JetPay to immediately pay to RTG all future damages, costs, interest and attorneys' fees incurred by RTG in

connection with the defense of the Second Direct Air Action; (v) awarding RTG an amount in excess of $75,000, exclusive of interest and costs; (vi) awarding RTG its costs in this matter, including attorneys' fees and interest; and (vii) awarding RTG any additional relief, including without limitation punitive damages, as this Court deems just, necessary and proper.

Date: January 31, 2019

Respectfully Submitted

*[signature]*

Jason Conti, *pro hac vice forthcoming*
Michigan Bar No. 55617
**Foley & Lardner LLP**
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
Phone: 313-234-7177
Fax: 313-234-2800

and

Sara Ann Brown
Texas State Bar No. 24075773
**Foley Gardere**
**Foley & Lardner LLP**
2021 McKinney Ave., Suite 1600
Dallas, TX 75218
Phone: 214-999-4887
Fax: 214-999-3887
sabrown@foley.com

4836-7940-6468.4